## HARRIS HOOVER v. THE STATE.

1. CRIMINAL LAW. *Conduct of Trial. Practice.* It is improper and reprehensible in counsel to ask leading questions of the witnesses, and to persist in it over the objection of the adverse party and in disregard of the rulings of the court. But this can scarcely be regarded as error constituting ground for new trial, unless thereby some illegal evidence is elicited.

2. SAME. *Juror.* Where a juror was allowed to sit at the bar with his son's counsel, while the son was on trial for assault and battery, to aid the counsel in that cause, in the presence of the court and the other jurors who had been elected to try the prisoner whose trial was temporarily suspended; *Held,* that no injury resulted to the latter from this intercourse.

3. SAME. *Officer of Jury.* Where the officer having charge of the jury trying the felony repeatedly separated from them, and they were out of his sight and presence while they had the case under consideration; but it was not shown that the jurors ever separated or were out of their room with their officer, and no misconduct is directly imputed to the jurors themselves, but to the officer in leaving them from time to time; *Held,* there was no good ground for setting aside the verdict.

Cases cited: *McLain* v. *The State,* 10 Yer., 241; *Hines* v. *The State,* 8 Hum., 596; *Luster* v. *The State,* 11 Hum., 174.

---

### FROM JACKSON.

---

Appeal from Circuit Court. N. W. McCONNELL, J.

JOHN P. MURRAY for Hoover.

DEADERICK, J., delivered the opinion of the court.

The plaintiff in error was convicted at September Term, 1875, of the Circuit Court of Jackson county of murder in the second degree, and sentenced to ten years imprisonment in the penitentiary. Upon the refusal of the Circuit Judge to grant him a new trial

he has appealed in error to this court. The first error assigned is that leading questions were asked the State's witnesses which were objected to, and the objections sustained, and that counsel for the State were directed to desist from asking such questions, but in many instances the questions were asked before objection could be made and sustained.

It is improper to ask leading questions of the witness of the party examining, except in certain cases, where the court in its discretion may permit it. And it is very reprehensible in counsel, who persist in violating the rule over the objection of the adverse party, and in disregard of the rulings and directions of the court. But the court trying the cause can correct the evil by enforcing the observance of the rules of law in the examination of, witnesses. We cannot see from this record that any injury resulted to the defendant; nor does it appear what the leading questions were, nor how they were answered. Such questions are often asked by counsel without reflection or design; but even when wilfully done, can scarcely be regarded as error, constituting a ground for new trial, unless thereby some illegal evidence is elicited, and in that case it would not be the leading question that could be assigned for error, but the admission of illegal testimony in response to it.

Another .ground of error insisted on, is that one of the jurors elected· was allowed to confer with one of the counsel for the State in regard to a cause pending against the juror's minor son. Seven jurors had been elected, and the sheriff was directed to go

to the country to summon a panel to complete the jury.

During the absence of the sheriff, the Judge was desirous of occupying the time in the trial of some short case, called the case of the *State* v. *Anderson Burris*, a minor, for assault and battery. His counsel, who was assisting in the prosecution of Hoover's case, stated that he could not try that case without defendant's father, who was one of the jurors selected in the case of the *State* v. *Hoover*, and proposed to continue it until the Hoover case was finished. The court, by consent of one of Hoover's counsel, directed the counsel to confer with the juror, which was done, and the trial was had.

It is shown by the affidavits of the two counsel of the juror's son, who were together when he was consulted, that nothing was said between them as to any other subject than the case of young Burris. The juror was allowed to sit at the bar with his son's counsel during the trial, to aid them in the cause, in the presence of the court and the other jurors who had been elected to try Hoover. We do not think that any injury resulted to Hoover from this intercourse. If the juror was likely to be influenced against Hoover because one of the prosecuting counsel was defending his son, for the same reason he would be quite as likely to entertain sympathy for him because the Attorney General was prosecuting both. It is further insisted by the plaintiff in error that the judgment of the Circuit Court should be reversed, because the officer having charge of the jury was re-

peatedly separated from them, and that they were often out of his sight and presence, while they had the case under consideration.

It appears from the affidavit of the officer and others, that he several times went for liquor, getting a pint at a time, and for apples, candles, and water for the jury; and that the well from which he got the water was about three hundred yards distant from the room in which the jury was kept, and the officer states that when he was so absent from them, he remained away only long enough to accomplish his mission, and always locked the door of their room on leaving, and always found them together in their room on his return, and that they never communicated with other persons, or were guilty of any misconduct to his knowledge.

It appears that there was another door to the jurors' room beside that which was locked by the officer, which fastened upon the inside, and was kept closed, and was not opened while the jurors occupied the room. It is not shown that the jurors ever separated, or were at any time out of the room without their officer. In fact, no misconduct is directly imputed to the jurors themselves, but to the officer, in leaving them from time to time. It is unquestionably the duty of the officer to remain with or near the jury so that he may protect them from intrusion. This object constitutes one of his chief duties, and neglect of it subjects him to severe punishment by the court, and any willful disregard of his duty, or corrupt use of his relation to the jury,

should be punished by the court with exemplary severity.

It has been repeatedly held by this court that where it is shown that a juror has separated from his fellow-jurors, it is not necessary to show that he has been tampered with, but it is sufficient to vitiate the verdict that he may have been. And unless it is shown by evidence other than that of the offending juror, that he had no communication with other persons, the verdict will be set aside. 10 Yerg., 241; 8 Hum., 602.

The juror in such case is shown to have been in fault in the first instance by separating himself from his fellows contrary to the instructions of the court, and as said in the case last cited, "has every motive of interest to shield himself from blame," and for this reason he is not permitted to exonerate himself by his own oath.

In a case reported in 11 Hum., 174, the jury were all together in their room, their officer having left them to get wood and water, a stranger entered their room and was invited to take a seat, which he did, nothing more was said; the stranger remained seated until the return of the officer, when he was ejected. These facts were shown by the affidavits of three of the jurors, and it was held that such facts constituted no ground for a new trial. The court said that there was no separation of the jury, nor were they in fault.

In the case under consideration, there is no imputation of any wrong committed by the jury. It is

Hoover v. The State.

not only not shown or charged that they were at any time separated, but the affidavits of two of them show that they never were separated during the trial, nor had any communication with any person beside their officer, except in the case already stated of Burris upon the trial of his son, when he was permitted to confer with his counsel.

The purpose of the strictness of the rule is to preserve the purity of the trial by jury, and wherever there is reason to believe that there has been, or might have been, corrupt influences to the prejudice of a defendant, the court will not hesitate to set aside a verdict against him. But where there is no ground for even a suspicion of such influences having been exerted, there is no reason for interfering with such verdict. But from this record we do not believe that there was any attempt or opportunity to tamper with the jury, and that there is, therefore, no good ground disclosed in the affidavits in the record for setting aside the verdict. The verdict, we are of opinion, is abundantly sustained by the evidence, and there being no error in the record, the judgment of the Circuit Court is affirmed.